PEDRO RODRIGUEZ BC6583
_____
Name and Prisoner/Booking Number

VALLEY STATE PRISON
_____
Place of Confinement

PO BOX 96
_____
Mailing Address

CHOWCHILLA CA 93610
_____
City, State, Zip Code

C4-17-3-LOW

(Failure to notify the Court of your change of address may result in dismissal of this action.)

Scanned at CDCR and E-Mailed
on 1-8-19 by _____
       (date)      (initials)

Number of pages scanned:
       50

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

PEDRO RODRIGUEZ IN PRO SE
_____
(Full Name of Plaintiff)                Plaintiff,

v.

(1) GOVERNOR GAVIN NEWSOM IN OFFC. CAP,
_____
(Full Name of Defendant)

(2) JONATHAN SOGLIN IN OFFICIAL CAP.,

(3) MICHAEL J HERSEK IN OFFICIAL CAP,

(4) V.C.G.C.B JULIE NAUMAN IN OFFC. CAP
                       Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

## 1:19-cv-00043 DAD-SAB

CASE NO. _____
           (To be supplied by the Clerk)

JURY TRIAL DEMANDED

## CIVIL RIGHTS COMPLAINT
## BY A PRISONER

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:

    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983

    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

    ☒ Other: Supplemental Jurisdiction under Title 28USC §1367

2.  Institution/city where violation occurred: All incidents occurred in the City of Redwood City, County Of San Mateo

Revised 3/15/2016                          1

## B. DEFENDANTS

1. Name of first Defendant: <u>Gavin Newsom sued offc. Cap.</u>. The first Defendant is employed as: <u>Governor</u> at <u>State Of California Governor's offc.</u>
             (Position and Title)                     (Institution)

2. Name of second Defendant: <u>JOnathan Soglin sued</u> in offc.cap. The second Defendant is employed as: <u>Executive Director</u> at <u>First District Appellate Project</u>.
             (Position and Title)                     (Institution)

3. Name of third Defendant: <u>Michael J Hersek sued in Offc</u> Cap. The third Defendant is employed as: <u>State Public Defender</u> at <u>State Public Defender's office</u>.
             (Position and Title)                     (Institution)

4. Name of fourth Defendant: <u>Julie Nauman sued in Offc</u> Cap. The fourth Defendant is employed as: <u>Executive Officer</u> at <u>Victim Compensation and Gov. Claims Bd.</u>
             (Position and Title)       cont'd attach "1-A"          (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner? ☒ Yes     ☐ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: <u>PEDRO RODRIGUEZ</u> v. <u>NEIL McDOWELL, et al.,</u>
      2. Court and case number: <u>US DIST COURT (CENTRAL) 5:18-cv-0400-AG-AGR</u>.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) <u>PENDING</u>

   b. Second prior lawsuit:
      1. Parties: <u>PEDRO RODRIGUEZ</u> v. <u>ARTHUR ANDERSON</u>
      2. Court and case number: <u>US DIST (CENTRAL) 5:18-cv-1181-AG-AGR</u>.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: Violation of 14th Amendment equal Protection of the Law Claim VILLAGE OF WILLOWBROOK V OLECH 528 US 562 (2000) CITY OF CLERBURNE, TEX V BURNE LIVING CENTER 73 US 432 (1985).

2. **Claim I.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

   ☐ Basic necessities    ☐ Mail    ☐ Access to the court    ☐ Medical care

   ☐ Disciplinary proceedings    ☐ Property    ☐ Exercise of religion    ☐ Retaliation

   ☐ Excessive force by an officer    ☐ Threat to safety    ☒ Other: EQUAL PROTECTION OF THE LAW.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   California Penal Code 1473.7(a) A person no longer imprisoned or restrained may prosecute a motion to Vacate a conviction or sentence for either of the following reasons; (2)newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice.¶1473.7(d) ALL MOTIONS SHALL BE ENTITLED TO A HEARING at the request of the moving party, the court may hold the hearing without the personal presense of the moving party if counsel for the moving party is present and the court finds good cause as to why the moving party cannot be present.¶1473.7(e)When ruling on this motion:(1)the court shall grant the motion to vacate the conviction or sentence if the moving party establishes,BY A PERPONDERANCE OF THE EVIDENCE, the existence of any of the grounds for relief specified in subdivision(a)(2)In granting or denying the motion the court shall specify the basis for its conclusion.¶1473.7(f) An order granting or denying the motion is appealable under subdivision (b) of section 1237 as an order after judgement affecting the substantial rights of a party.If **state law** whether statutory or decisional creates a liberty interest, the due process clause requires fair procedures for its vindication SWARTHOUT V COOKE(2011) 562 US 216... continue attachment "1-A"

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   The plaintiff is being forced to suffer an irreperable injury with no adequate remedy of law,O'SHEA V LITTLETON 414 US 488 (1974);JOLLY V COUGHLIN 76 F3rd 468 (2d cir 1996).The due process Clause protects prisoners from being deprived of
   
   continued "1-A"

5. **Administrative Remedies:**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☐ Yes   ☒ No

   b. Did you submit a request for administrative relief on Claim I?    ☐ Yes   ☒ No

   c. Did you appeal your request for relief on Claim I to the highest level?    ☐ Yes   ☒ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. not applicable.

## CLAIM II

1. State the constitutional or other federal civil right that was violated: 1st amendment denial of redress in the courts.

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☒ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Same facts as Claim 1

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   The defendant's named herein have denied the plaintiff his 1st amendment right to an hearing as statutorily required under CA Penal Code 1473.7 et seq.,

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☐ Yes  ☒ No
   b. Did you submit a request for administrative relief on Claim II?    ☐ Yes  ☒ No
   c. Did you appeal your request for relief on Claim II to the highest level?    ☐ Yes  ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Not applicable

4

## E.  REQUEST FOR RELIEF

State the relief you are seeking:

Plaintiff seeks Declatory relief against the defendants that the defendant's named herein did deny equal protection of the law under the 14th Amendment by frustrating the plaintiff from obtaining the benefits of CA Pen Code 1473.7 et seq., (2) The plaintiff seeks prospective Injunctive Relief directing the defendant's to immediately grant equal protection and benefits of CA Pen Code 1473.7 which does include a hearing and cease the unconstitutional act of frustrating the plaintiff from obtaining an hearing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___1/8/18___
DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

6

ATTACHMENT "1-A"
IN SUPPORT OF COMPLAINT WITH JURY DEMAND

INTRODUCTION

This is a civil rights action filed by PEDRO RODRIGUEZ, a state prisoner, for prospective injunctive and injuctive relief under 42 USC §1983 alleging the defendants named herein did with deliberate and intentional indifference violate the petitioner's substantive and procedural rights gauranteed under the 1st and 14th Amendments of the US constitution. Plus deny the petitioner equal protection of the law as gauranteed under 14th Amendment.

The defendants are responsible for enforcing a custom or policy which denies the petitioner a fair hearing as required under Penal Code 1473.7.

Official-Capacity actions for prospective injunctive relief are not treated as actions against the state, WILL V MICHIGAN DEPT OF STATE POLICE 491 US 58 71 n.10 (1989), thus a plaintiff may seek prospective injunctive relief in federal court against a state official in his official capacity to prohibit implementation of a state policy or custom that violates that plaintiff's constitutional rights, GRAHAM 473 US at 167 n.14, citing EX PARTE YOUNG, 209 US 123 (1908). A plaintiff seeking prospective injunctive relief against a state official is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation, HARTMANN V CAL DEPT OF CORR & REHAB 707 F2d 1114 (9th cir 2003) rather a plaintiff need to only identify the law challenged as a constitutional violation and name the official within the entity who can apparantly respond to injunctive relief.

DEFENDANTS
v. continued

Victim Compensation and Goverment Claims Board Chairperson Marybel Batjer
in official Capacity

CITY OF REDWOOD CITY,CA is named as a defendant
County OF SAN MATEO, CA is named as a defendant

B. DEFENDANTS (continued)

5. Name of Fifth Defendant Marybel Batjersued in Offc. Cap. The Fifth defendant is employed as Board Chairperson at The Victim Compensation and Goverment Claims Board.

6.Name of the Sixth Defendant is the City Of Redwood City PerMONELL V. CITY DEP'T OF SOCIAL SERVICES 436 US at 690-691

7.Name of the Seventh Defendant is the County Of San Mateo per MONELL V. CITY DEP'T OF SOCIAL SERVICES 436 US at 690-691

ALL DEFENDANTS NAMED HEREIN ARE SUED IN THEIR OFFICIAL CAPACITIES.

1 of 4

ATTACHMENT "1-A" continued

D. CAUSE OF ACTION
CLAIM I (continued)

The Plaintiff suffers an ongoing concrete injury of being a convicted felon (ie. gun ownership and hold office in his UNion as an elected board member).The wording of CA Pen Code 1473.7 et seq, provides a liberty interest to a convicted felon no longer restrained  by entitling the convicted to a hearing and relief by a perponderance of the evidence.The plaintiff alleges Defendant's Gavin Newsom, Jonathan Soglin, Michael J Hersek, Julie Nauman, Marybel Batjer, the City of Redwood City, and the County of San Mateo have all furthered and facilitated a policy which intentionally frustrates and denies the plaintiff a Member of the Mexican American Community relief under Penal Code 1473.7 et seq, The defendants are culpable for the Plaintiff's constitutional injury under CROW V COUNTY OF SAN DIEGO 593 F3rd 841 (9th Cir 2010) whereas the conspirators need not know every detail of the conspiracy, just their part. Per attached "A" Respondent's Brief Filed June 14, 2018 pg 12 A. Procedural Background;

> "Appellant represented himself pro se on remand.(1RT 1-5)On July 10,2017, appellant filed a motion to vacate his sentence and requested permission to call a witness in mitigation and offer evidence in support of his motion. (1CT 10-186) Specifically, appellant sought to question Detective Kwok about information obtained from appellant's IPhone and to present lab notes related to forensic information related to his stalking conviction. (1CT 171,179)"

Further page 13 last paragraph

> "Appellant expressed his interest in presenting a witness in mitigation. He stated the 'resentencing and motion to vacate' are 'kind of joined'(1RT 8) Because of the nexus, he wanted to present Detecive 'Sherman Kwok as a witness in mitigating factors.'"

The plaintiff attaches appellate counsel's reply brief as attachment "B" page 8 which qoute's the plaintiff and his intent to make a record of the false evidence used to secure his conviction;

> "...since the Court is able to have that ability to restructure my sentencing,I would have- I should have the ability, myself, to present mitgating factors.¶ And one of those mitigating factors would be testimony from Sherman Kwok and the evidence in his possession that I felt was not introduced at trial. And that's kind of where everything gels together here, that there is evidence that I know is available, that is in the possession of the Regional Forensic Crime Laboratory..."

Per attached "C" opinion of the court filed 12/21/2018 page 5 last paragraph
> "He said Kwok and the Regional Forensic Crime Laboratory possessed evidence that was not introduced at trial. It appears from this statement and from defendant's 'Motion to Arrest Judgment' that

2 of 4

Kwok's proposed testimony would concern not circumstances in mitigation,but propriety of defendant's convictions..."

Finally in attachment "D" letter from appellate counsel 12/22/18

"Under the terms of my appointment, I have the discretion to decide whether to file a petition for review on your behalf. I am exercising that discretion by deciding not to file a petition for review. In my professional opinion, your case does not present the type of issues that would be granted review by the California Supreme Court. As you are no longer in custody on this matter, you would not be able to bring a petition for writ of habeas corpus in federal district court even if you did achieve finality in state court by filing a petition for review."

In attachment's "A","B",and "C" references were made to the plaintiff's intent and desire for a "Motion to Vacate" and that this desire and intent was understood by appellate counsel the attorney General and the Appellate court. and that per CA Pen Code 1473.7 et seq, a person no longer imprisoned or restrained may prosecute amotion to vacate a conviction or sentence on evidence of actual innocence.And motions **shall be entitled to a hearing** and that per (f) an order granting or denying is appealable. The plaintiff was never granted an hearing and was never granted an appeal hearing on his "motion to vacate".

## CLAIM I INJURY
### continued

liberty without due process of law, WOLFF V McDONNELL 418 US 539 (1974).

The Equal Protection Clause requires that persons who are similarly situated be treated alike, CITY OF CLERBUNE,TEX V BURNE LIVING CENTER 73 US 432 (1985). An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class, LEE V CITY OF LOS ANGELES 250 F3rd 668 (9th Cir 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, VILLAGE OF WILLOWBROOK V OLECH 528 US 562 (2000).

A plaintiff seeking **prospective injunctive relief** against a state official is not required to allege named officials personal involvement in the acts or omissions constituting the alleged constitutional violation rather a plaintiff need only identify the law challenged as a constitutional violation and name the official within the entity who can apparantly respond to injunctive relief,HARTMANN V CAL DEPT OF CORR & REHAB, 707 F2d 1114(9th Cir 2013). Govornor Gavin Newsom Is an official who can respond to injunctive relief.

The plaintiff is not barred by HECK V. HUMPHREY (1994) 512 US 477 as the plaintiff is only seeking a hearing as is entitled to under Penal Code 1473.7 and success in this suit for a hearing does not equal success in the hearing

3 OF 4

"1-A" continued

Plaintiff can maintain an action for prospective injunctive relief against the State officials responsible for administering and enforcing the unconstitutional custom or policy, CORNWELL V CALIFORNIA BD. OF BARBERING AND COSMETOLOGY (S.D. Cal May 2,1997) 962 F supp 1260. Here the County of San Mateo is guilty of enforcing an custom or policy as to have the force of law, MONELL V NEW YORK DEP'T OF SOCIAL SEVICES 436 US at 690-691, which is to frustrate the Plaintiff from having a hearing pusuant CA PEN Code 1473(d) which would indeed expose bad acts by county officials acting under the color of law. The City of Redwood city is culpable for furthering the conspiracy,custom or policy which frustrates the plaintiff from equal protection of the law under CROWE V COUNTY OF SAN DIEGO 593 F3rd 841 (9th Cir 2010) Jonathan Soglin as executive director of the First Appellate project is guilty of furthering a policy of frustrating the plaintiff from aquiring a hearing as mandated per Cal Pen Code 1473(7l) as he is knowledgeable of these acts, HILDEBRANDT V ILLINOIS DEP'T OF NATURAL RESOURCES 347 F3rd 1014 (7th cir 2003) AL-KIDD V ASHCROFT 580 F3rd 949 (9th Cir 2009). Michael J Hersek Is guilty of furthering a custom or policy which frustrates the plaintiff from benefitting from CA PEN Code 1473(7l), CROWE V COUNTY OF SAN DIEGO(supra). Julie Nauman Is guilty of furthering a polciy which frustrates the plaintiff from benefitting from CA Pen Code 1473.7(d).Marybel Batjer is guilty of furthering a policy which frustrates the plaintiff from benefitting from CA Pen Code 1473.7(d) To establish liability for a conspiracy in a §1983 case, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional rights. MENDOCINO ENVTL. CTR V MENDOCINO COUNTY 192 F3rd 1283,1301 (9th Cir 1999). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendant's." Id "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." CROWE V COUNTY OF SAN DIEGO 608 F3rd 406 (2010) hn. 43,44. The plaintiff has met his burden in that repeatedly he has petitioned the defendant's named herein through legal filing's and in various motions the court's have acknowledged the plaintiff's desire and intent and mooted the plaintiff denying him equal protection of the law. Success in this petition does not equal an invalidation of the conviction the plaintiff only seeks the statutorally required hearing. The court could very well rule against the plaintiff in the 1473.7(d) hearing.

4 OF 4

Rodriguez
BC6580

# VERIFICATION

## FORM No. 2

Verification of Pleading (Code Civ. Proc., § 446)
Declaration under Penalty of Perjury Form (Code Civ. Proc., §§ 446, 2015.5)

by Party

CASE TITLE __RODRIGUEZ  V  NEWSON, et al,__

I, ___PEDRO  RODRIGUEZ___, declare:
(Name)

I am the ___PLANTIFF___ in the above-entitled matter;

I have read the foregoing ___8/1983   LAWSUT___
(pleading, e.g., complaint) and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

Executed on ___SALARY    28___, 20_18_, at ___USP___
___MADERA___ County, California.

I declare (or certify) under penalty of perjury that the foregoing is true and correct.

_____
(Signature of Party)

ATTACHMENT "A"
RESPONDENT'S BRIEF
FILED JUNE 14,2018
pg 12 paragraph 3
forward DESCRIBES
MOTION TO VACATE.

ATTACHMENT "A"   ATTACHMENT "A"   ATTACHMENT "A"   ATTACHMENT "A"   ATTACHMENT "A"   ATTACHMENT "A"

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FOUR

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PEDRO LUIS RODRIGUEZ,<br><br>    Defendant and Appellant. | Case No. A152030 |

San Mateo County Superior Court, Case No. SC074586A
The Honorable Jonathan E. Karesh, Judge

## RESPONDENT'S BRIEF

XAVIER BECERRA
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
JEFFREY M. LAURENCE
Senior Assistant Attorney General
RENE A. CHACON
Supervising Deputy Attorney General
LINDA M. MURPHY
Deputy Attorney General
State Bar No. 148564
   455 Golden Gate Avenue, Suite 11000
   San Francisco, CA  94102-7004
   Telephone:  (415) 510-3828
   Fax:  (415) 703-1234
   E-mail:  Linda.Murphy@doj.ca.gov
*Attorneys for Respondent*

Received by First District Court of Appeal

1

## TABLE OF CONTENTS

Page

Introduction ............................................................................................. 6

Statement of the Case .............................................................................. 6

Statement of Facts ................................................................................... 7

Argument ............................................................................................... 12

    Appellant's Sentence Should Be Affirmed; The Trial Court
    Understood Its Sentencing Discretion ............................................... 12

    A.    Procedural background ........................................................... 12

    B.    Legal Principles ..................................................................... 15

    C.    On This Record, No Remand Is Necessary ........................... 16

Conclusion ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Denham v. Superior Court*
(1970) 2 Cal.3d 557 ...........................................................................17, 19

*People v. Alvarez*
(1996) 49 Cal.App.4th 679 ..............................................................15, 18

*People v. Belmontes*
(1983) 34 Cal.3d 335 ...............................................................................20

*People v. Burbine*
(2003) 106 Cal.App.4th 1250 ..................................................................19

*People v. Cattaneo*
(1990) 217 Cal.App.3d 1577 ...................................................................19

*People v. Craig*
(1998) 66 Cal.App.4th 1444 ....................................................................15

*People v. Evans*
(1983) 141 Cal.App.3d 1019 ...................................................................19

*People v. Giminez*
(1975) 14 Cal.3d 68 .................................................................................17

*People v. Gutierrez*
(2009) 174 Cal.App.4th 515 ....................................................................17

*People v. Gutierrez*
(2014) 58 Cal.4th 1354 ............................................................................19

*People v. Heishman*
(1988) 45 Cal.3d 147 ...............................................................................19

*People v. Hill*
(1986) 185 Cal.App.3d 831 .....................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

*People v. Jacobo*
(1991) 230 Cal.App.3d 1416 .................................................................. 18

*People v. Jeffers*
(1987) 43 Cal.3d 984 ........................................................................... 15

*People v. Langdon*
(1967) 250 Cal.App.2d 595 .................................................................. 16

*People v. May*
(1990) 221 Cal.App.3d 836 .................................................................. 20

**STATUTES**

Evidence. Code
§ 452, subd. (d) .................................................................................. 6

Penal Code
§ 243, subd. (e)(1) .............................................................................. 6
§ 502, subd. (c)(1) .............................................................................. 6
§ 502, subd. (c)(2) .............................................................................. 6
§ 502, subd. (c)(4) .............................................................................. 6
§ 530.5, subd. (a) ............................................................................... 6
§ 632.5, subd. (a) ............................................................................... 6
§ 646.9, subd. (a) ............................................................................... 6
§ 646.9, subd. (b) ............................................................................... 6
§ 653m, subd. (a) ............................................................................... 6
§ 1473.6 ................................................................................. 13, 15, 16

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Fourth Amendment ........................................................................... 13

# TABLE OF AUTHORITIES
## (continued)

**Page**

## COURT RULES

California Rules of Court
    rule 4.421(a)(3) ............................................................................. 18
    rule 4.421(a)(6) ............................................................................. 18
    rule 4.421(a)(8) ............................................................................. 18
    rule 4.421(a)(11) ........................................................................... 18
    rule 4.421(b)(1) ............................................................................. 18
    rule 4.421(b)(2) ............................................................................. 18
    rule 4.421(b)(4) ............................................................................. 18
    rule 4.421(b)(5) ............................................................................. 18

## INTRODUCTION

In 2014, after being convicted of nine offenses, appellant Pedro Luis Rodriguez successfully appealed his conviction on one count of simple stalking. Following this Court's decision vacating the conviction and remanded the matter for resentencing, in 2017, the trial court resentenced appellant to the same prison term, less the eight-month prison term associated with the vacated count. Contrary to appellant's claim, the record reflects the trial court understood its jurisdiction to reconsider his entire sentence. Therefore, appellant is not entitled to a second resentencing.

## STATEMENT OF THE CASE

On February 14, 2012, a San Mateo County jury convicted appellant of stalking (Pen. Code, § 646.9, subd. (a))[1], stalking while under a restraining order (§ 646.9, subd. (b)), identity theft (§ 530.5, subd. (a)), computer fraud (§ 502, subd. (c)(1)), electronic data theft (§ 502, subd. (c)(2)), destroying computer data or programs (§ 502, subd. (c)(4)), intercepting electronic communications (§ 632.5, subd. (a)), misdemeanor battery (§ 243, subd. (e)(1)), and making threats or annoying telephone calls (§ 653m, subd. (a)). (Case No. A134782, 2CT 347-355.)[2]  On November 26, 2014, this Court vacated appellant's stalking conviction, finding it was a lesser included offense of stalking while under a restraining order. This Court remanded the matter to the trial court for resentencing, and affirmed the judgment in all other respects. (Case No. A134782.)

On July 21, 2017, the trial court resentenced appellant. It vacated the eight-month sentence associated with the stalking conviction and left the

---

[1] All further statutory references are to the Penal Code.

[2] Respondent requests this Court take judicial notice of the record in the previous record on appeal in Case Nos. A134782 & A138665. (See Evid. Code, § 452, subd. (d).)

6

remainder of the sentence intact, resulting in a new sentence of five years, four months. (1RT 12.) On July 26, 2017, appellant timely appealed. (CT 216.)

## STATEMENT OF FACTS

During 2010 and 2011, appellant harassed a woman who terminated their dating relationship and obtained a restraining order against him. Appellant used telephone calls, text messages, emails, and manipulated computer programs to threaten her. He demonstrated sophistication in his crimes, which escalated in seriousness.

This Court summarized the facts of this case as follows:

> M.C. met defendant in April 2010 and they began a dating relationship. By September 2010, she noticed that defendant was sexually aggressive and often jealous. She also became aware that he was going to jail for violating a restraining order involving a former girlfriend.

> On October 2, 2010, M.C. attended a wedding reception with defendant where they both became intoxicated. After the reception, they returned to defendant's apartment. When they arrived, M.C. decided she wanted to go home. Defendant would not let her leave; he grabbed her and dragged her to his apartment. M.C. was kicking and screaming but she could not get away from defendant. Defendant told her to be quiet: "If you don't shut the 'F' word up, I am going to kill you. And I am going to—nobody will ever find your body...." Defendant forced her to have sexual intercourse. The next morning, M.C. acted as if nothing had happened. She did not want to get the police involved.

> During the month of October, M.C. continued her relationship with defendant. On October 29, 2010, M.C. and defendant argued, and M.C. told him to get out of her life. Defendant called her repeatedly the next couple of days. They met a week later in early November for breakfast. M.C. was attempting to give defendant "closure" and to let him know there was no reason to continue to text or talk.

7

Defendant continued to call M.C., sometimes up to 20 times in a row. She would answer the phone from time to time, but eventually changed her phone number on November 17, 2010. Defendant called her within hours at her new number. She immediately changed her phone number again. That same day, defendant called her at the second new number.

M.C. began to feel guilty about terminating the relationship during the last two weeks of November. She reconciled with defendant at the end of November for a couple of days. She decided to end the relationship when she discovered that defendant was using a dating Web site and that he had accessed pornography on the computer. She told defendant that she never wanted to hear from him again.

Defendant immediately began a pattern of harassing M.C. by calling her cell phone and sending her text messages. He called her at 5:00 a.m. and continued to call her until late evening. He also called her using different telephone numbers that she recognized as someone she knew, such as her parents' or her brother's telephone numbers. M.C. later learned that defendant was using a spoof card. Defendant also sent letters to her parents seeking their intervention. He knocked on M.C.'s apartment door or windows on a nearly daily basis, sometimes in the middle of the night, and sent her derogatory text messages.

On December 27, 2010, at about 5:40 a.m., the police responded to M.C.'s 911 call that defendant was trying to break into her apartment. M.C. was frantic and crying. She reported that defendant had been consistently showing up at her apartment and banging on her windows or her door, and that he was sending her multiple text messages and calling her.

On December 28, 2010, M.C. obtained a restraining order against defendant. The restraining order lapsed on January 19, 2011 because M.C. failed to appear for a court hearing. Defendant thereafter commenced his pattern of harassing phone calls.

M.C. met with Maureen Kildee, an attorney, to discuss the restraining order on January 26, 2011. Kildee had never met defendant. After meeting with M.C., she went to a pub in San Mateo to meet with friends. On January 29, 2011, Kildee received an e-mail from defendant, noting that she had been at

8

the pub on January 26, 2011. Kildee was concerned for her own safety because the e-mail suggested that defendant had been following her. She received another e-mail from defendant the following day. He again included information in the e-mail suggesting he was following Kildee, and he referenced the fact that she had called M.C. Kildee contacted the police because she feared defendant was not only following her but also accessing M.C.'s voicemail.

On February 1, 2011, the court granted M.C.'s request for a restraining order against defendant. Defendant called M.C. that afternoon using a spoof card number. Defendant continued to contact her on an almost daily basis through February. His messages expressed anger. M.C. changed her phone number again on February 8, 2011.

On February 11 and 15, 2011, M.C. went to the police department to report that defendant had violated the restraining order. She provided documentation supporting the violations including phone records, e-mail records, and billing statements. The matter was forwarded to the detective bureau for investigation.

On February 14, 2011, M.C.'s cell phone coverage was suspended even though she had paid her bill and had not cancelled her service. When the service was reactivated that same day, it was again suspended without her authorization and her password was changed. On February 15, 2011, she learned that her debit card was cancelled and that she had been signed up for a "creditkarma.com" account at a cost of $20 per month. On another occasion, she was locked out of her e-mail, Facebook, and Verizon wireless on-line accounts because someone had changed the passwords on those accounts. When she tried to set up new passwords, they were changed within minutes to ones she did not authorize. Beginning on February 25, 2011, M.C. began to receive a barrage of text messages from the Web site, Txt2Day.com, an anonymous text messaging service. The tampering with her cell phone continued through February and March, with phone calls, text messages, and changes to her voice mail box and cell phone pin numbers. M.C. felt threatened, anxious, and terrorized as a result of the string of calls and text messages and changes to her accounts.

9

The electronic tampering ended on March 18, 2011. The police arrested defendant on March 22, 2011.

Detective Alex Rizzato investigated the case beginning in February 2011. He subpoenaed the telephone records of both defendant and M.C. On March 22, 2011, he conducted surveillance of M.C.'s apartment and observed defendant drive by her residence and come to almost a complete stop in front of it at around 5:30 a.m. Defendant was in violation of the restraining order because he was within 100 yards of M.C.'s residence. Rizzato effected a traffic stop and arrested defendant. In a search incident to defendant's arrest, Rizzato found defendant's iPhone. He opened the browser on the phone and found that the last Web site defendant visited was an encryptor type Web site. He also found numerous applications on the phone including Google Voice, Text Now, and Zionks, a spoof card website. Rizzato explained that spoofing allows an individual to change his or her outgoing phone number so that it appears to be a different phone number. Defendant also had a police radio application on his phone that allowed him to listen to police scanners on his phone, and Vopium, an application allowing him to make free calls over the Internet.

Rizzato, along with other officers, searched defendant's apartment pursuant to a search warrant. He seized defendant's computers as well as a stack of business cards which included one on which he had written Rizzato's parents' home phone number on it, an unlisted number. Rizzato found his work phone number and different variations of his name on defendant's desk. Rizzato became concerned for his safety.

The police also found papers with M.C.'s phone number, e-mail addresses, and the e-mail addresses of some of her friends and of her attorney. In addition, they found a machete, a switch blade knife, and a samurai sword.

Rizzato subsequently listened to the recordings of defendant's telephone calls from the county jail. In one of defendant's calls, he instructed a family member to log onto his e-mail and Google accounts and to notify the account providers that his accounts had been hacked. In another, he instructed a friend to delete his telephone calls to M.C.'s telephone number and to delete any "spoof" calls.

In a search of defendant's car, the police found a laptop computer and a GPS tracking device jammer. The latter device is used to jam or scramble any type of GPS tracking signal.

The police sent defendant's computer equipment to the FBI's regional computer forensic laboratory for examination. FBI Agent Sherman Kwok testified that defendant's internet browsing history showed that he had accessed Web sites designed to hide or encrypt a person's identity when sending e-mail messages. Defendant's computers and iPhone were also the source of many of the e-mails M.C. received.

Another witness, S.S., testified that she met defendant when she was 17 and began dating him in 2008. Defendant became verbally and physically aggressive toward her, but she continued to date him until December 2009. In December 2009, S.S. reported defendant to the police because defendant had been physically violent with her to the point she had collapsed on the floor of his apartment. She ended the relationship with defendant, but he continued to call her and send her e-mails. He called her work place, sent e-mails to her boss, and hacked her cell phone and e-mail accounts. He called her contacts and badgered them, and sent e-mails using her name and account. Defendant also posed as S.S. on Skype and used a woman's voice to talk to her contacts. S.S. was a "nervous wreck" and felt that defendant was threatening her safety, her job, and her co-workers. She obtained a restraining order against defendant in March 2010.

Defendant violated the restraining order by continuing to harass S.S. with e-mails and text messages. The latter did not show defendant's telephone number but a "999" number. S.S. had to change her phone number six or seven times because defendant would obtain the new one and continue to harass her. As a result of defendant's violation of the restraining order, he pled no contest to a criminal charge. He served a county jail sentence on the charge in September 2010.

(Case Nos. A134782 & A138665, Opn. at pp. 2-6.)

11

## ARGUMENT

### APPELLANT'S SENTENCE SHOULD BE AFFIRMED; THE TRIAL COURT UNDERSTOOD ITS SENTENCING DISCRETION

Appellant contends "the trial court misunderstood its authority to reconsider the entire sentence after remand for resentencing." (AOB 9.) This Court should affirm the judgment. The trial court's comments and incorporation of its initial sentencing remarks demonstrated it understood its discretion and sought to impose the maximum prison term.

### A.   Procedural Background

On November 26, 2014, this Court vacated appellant's stalking conviction on the ground it was included in his conviction for stalking while under a restraining order. This Court remanded the matter to the trial court for resentencing and affirmed appellant's conviction in all other respect. (Case Nos. A134782 & A138665.)

Appellant represented himself pro se on remand. (1RT 1-5.) On July 10, 2017, appellant filed a motion to vacate his sentence and requested permission to call a witness in mitigation and offer evidence in support of his motion. (1CT 10-186.) Specifically, appellant sought to question Detective Kwok about information obtained from appellant's iPhone and to present lab notes related to forensic information related to his stalking conviction. (1CT 171, 179.)

At the July 21, resentencing hearing, the trial court explained there were "two sort of global things that we're here for. One of them is the resentencing, which was as a result of the Court of Appeal opinion. [¶] The other is the motion to vacate judgment, which I'm going to handle separately." (RT 5.) The court expressed its view that this Court had "remanded the case back to this court for the specific and limited purpose of vacating the conviction as to one of the counts and correcting the abstract

12

of judgment." (1RT 5.) The court stated, "there's nothing in the opinion that suggests you're entitled to a full reopening of the sentencing process." (1RT 5.) The court further stated, "I also find that you will not suffer any prejudice, because you have already served your time, and were I to follow the Court of Appeal's decision, you're actually getting a benefit, because eight months is being taken off your sentence." (1RT 5-6.)[3] The prosecutor agreed with the trial court that it had no jurisdiction to vacate the judgment or relitigate any Fourth Amendment claims and had power only to resentence on count one. (1RT 6.)

The court discussed appellant's July 10, pro se motion under section 1473.6, which allows a person who is out of custody to vacate a judgment based on newly discovered evidence of fraud or misconduct by a government official. (1RT 7; 1CT 15.) Concluding that the resentencing procedures should be consistent with those laid out by section 1473.6 ["Motion to Vacate Judgment by Person No Longer Restrained on the Basis of Newly Discovered Evidence"], the trial court noted it had 60 days to issue an order to show cause. (1RT 7-8.)

Appellant expressed his interest in presenting a witness in mitigation. He stated the "resentencing and motion to vacate" are "kind of joined." (1RT 8.) Because of the nexus, he wanted to present Dectective "Sherman Kwok as a witness in mitigating factors." (1RT 8.) Appellant said he understood that because one of his counts was vacated, the trial court could restructure his sentence, and he said he "should have the ability, myself, to present mitigating factors," which would be "testimony from Sherman

---

[3] As the basis of his prejudice argument, appellant highlights that although he served his prison term, he was still subject to a term or parole at the end of sentence, and any excess custody credits could be applied to his parole period. (AOB 15, citing §3000.)

Kwok" and "evidence . . . in the possession of the Regional Crime Laboratory." (1RT 8-9.)

The prosecutor objected, arguing, "this court isn't resentencing the defendant on discretion from the Court. This Court, essentially, has no discretion." (1RT 9.) The prosecutor stated, "introducing mitigating or aggravating information for anything at this stage is, essentially, irrelevant." (1RT 9.) The trial court agreed with the prosecutor, noting he was "preaching to the choir." (1RT 9.)

The court stated it found appellant's motion to vacate "a completely separate issue from the sentencing." (1RT 10.) The court stated, "I believe that I have the authority simply to follow the Court of Appeal's opinion, and vacate the sentence as [to] Count 1, resentence the defendant on that ground." (1RT 10.) It further stated, "I don't find anything in the Court of Appeal's record that will allow me to do what Mr. Rodriguez is suggesting that I'm doing. I'm going to follow their instructions, and also what the Court of Appeal specifically said was to redo the abstract, which I think is one of the other reasons they sent it here." (1RT 10-11.) Accordingly, the court overruled appellant's objection to resentencing. (1RT 11; 1CT 10 [objection to resentencing as a denial of due process].) It also denied appellant's request for an evidentiary hearing and ancillary services. (1RT 11.) The court then stated its intention to "proceed with resentencing." (1RT 11.)

The court then invited comment on the issue of sentencing, and appellant maintained that he was innocent of the convictions. (1RT 11.) Appellant argued his felony conviction was "a stigma which affects my job application." (1RT 12.) The court pointed out that *resentencing has nothing to do with vacating your sentence. The conviction stands regardless of whether I resentence you or not.* (1RT 12, italics added.)

14

The court stated, "*in accordance with the instructions by the Court of Appeal*, . . . Count 1, the *simple stalking conviction*, which is an eight-month consecutive sentence, *is vacated*, in accordance with the Court of Appeal's decision." (1RT 12, italics added.) The court stated, "*the remaining sentence will stand* and the vacating should be nunc pro tunc to the sentencing date of April 20, 2012." (1RT 12, italics added.) The court further stated, "the remainder of the sentence is the same, except [the total was now] five years, four months. *The rest of the sentence remains the same, for the same reasons it was back in April of 2012.*" (1RT 12, italics added.) The court noted that appellant had served his time on this case but was incarcerated based on a San Diego case. (1RT 13.)

## B.   Legal Principles

A trial judge's initial sentencing decisions do not constrain him or her from imposing any authorized sentence following remand from the appellate court, as long as the aggregate prison term does not exceed the initial sentence. (*People v. Craig* (1998) 66 Cal.App.4th 1444, 1447.) A trial court regains jurisdiction to modify an original sentence if the sentence is vacated and the matter remanded for resentencing. (See *People v. Hill* (1986) 185 Cal.App.3d 831, 834.) In such situation, the trial court is "not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices." (*Ibid.*) A trial court is presumed to understand the scope of its sentencing discretion. (*People v. Jeffers* (1987) 43 Cal.3d 984, 1000.) The appellate court will not conclude the trial court misunderstood its sentencing discretion "in the absence of some affirmative showing that it misunderstood its discretion." (*People v. Alvarez* (1996) 49 Cal.App.4th 679, 695.)

Section 1473.6 authorizes a defendant who is no longer imprisoned to move to vacate a judgment based on newly discovered evidence of fraud or misconduct by a government official. (§ 1473.6.) However, a trial court

15

lacks jurisdiction to entertain a motion to vacate a judgment that was previously affirmed by the appellate court. (*People v. Langdon* (1967) 250 Cal.App.2d 595.)

## C.   On This Record, No Remand Is Necessary

Here, the trial court considered both appellant's section 1473.6 motion and the directive from this Court to vacate the conviction on count one and resentence appellant. (1RT 5.) The trial court properly declined appellant's request to call new witnesses in mitigation and accept evidence in support of appellant's motion to vacate the judgment. (1CT 10-186.) This Court had already vacated the stalking conviction and affirmed the conviction for stalking while under a restraining order. (Case Nos. A134782 & A138665.) Therefore, the trial court properly concluded it was without power to entertain a motion to vacate the judgment on count two. (See *Langdon, supra,* 250 Cal.App.2d at p. 595.)

Contrary to appellant's claim (AOB 12), the trial court did not misunderstand its jurisdiction to reconsider appellant's entire sentence. As the trial court stated at the hearing, it was addressing two issues: appellant's section 1473.6 motion and this Court's order remanding the matter for resentencing. (1RT 5.) The trial court properly declined appellant's request to present witnesses and evidence at the hearing under section 1473.6. (1RT 9-11.) The record supports the conclusion that the court properly discharged its duty to resentence appellant and understood the breadth of its discretion. The trial court announced it was vacating "Count 1, the simple stalking conviction, which is an eight-month consecutive sentence" and ordered "the remaining sentence will stand." (1RT 12.) If viewed in isolation as a stand-alone comment, this initial statement by the trial court reducing appellant's sentence by eight months could be considered ambiguous. (See AOB 12-14.) However, when read in context, any ambiguity disappears.

16

Immediately after making the initial statement, the court further ordered, "the remainder of the sentence is the same, except [the total was now] five years, four months. The rest of the sentence remains the same, *for the same reasons it was back in April of 2012*." (1RT 12, italics added.) The court's reference to and incorporation of its original sentencing pronouncement reflects the trial court's intention to exercise its discretion to sentence appellant to the fullest sentence permitted by law. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["a judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown"]; *People v. Giminez* (1975) 14 Cal.3d 68, 72 [unless there is "a clear showing [the trial court's] sentencing decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate sentencing objectives"]; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 [appellate court does not presume error unless the record establishes "on its face that the trial court misunderstood the scope of [its] discretion"].)

At appellant's initial sentencing, the trial court stated, "this is not a probation case. It's not even close." (Case Nos. A134732 & A138665, 8RT 1173.) In imposing maximum consecutive sentences on all felony convictions, the trial court detailed its reasons:

> You know, Mr. Rodriguez, to be quite honest, *your conduct is appalling* in my view.
>
> I think the *evidence was overwhelming of your guilt*. I think that what you did was *turn Ms. Chester's life into a living hell* for those many months and it is effects that she still is experiencing today.
>
> This is not a probationary sentence for a number of reasons, including the *vulnerability of the victim*, the fact that you were an *active participant* in the crime, as well as the *unbelievable*

17

> *level of criminal sophistication* in the commission of these crimes.
>
> So, the issue then is: what is the sentence going to be? There are a *number of aggravating factors*, Mr. Rodriguez, that the Court takes into account in deciding which term to choose.
>
> And what I am going to consider in imposing the *upper term* and giving you *consecutive sentences* is the fact that you show *no remorse*, you were *on probation* at the time, you *inflicted emotional injury* on her. I think you remain a *danger to her and others*, the *crimes* were *numerous* and of increasing *seriousness*, and your prior – you had *prior unsuccessful performance on probation*.

(Case Nos. A134782 & A138665, 8RT 1182-1183, italics added.)

The trial court's reference to its initial sentencing decision indicates it again intended to sentence appellant to the maximum consecutive felony term, which was now five years, four months. (CT 395.) The same aggravating factors applied after this Court vacated the simple stalking count and remanded the case for resentencing. (See Case Nos. A134782 & A138665; CT 393-405, 422-433 [Cal. Rules of Court, rules 4.421(a)(3) [vulnerable victim], 4.421(a)(6) [threatened victims], 4.421(a)(8) [carried out with planning, sophistication, professionalism], 4.421(a)(11) [took advantage of position of trust], 4.421(b)(1) [history of violent behavior, serious danger to others], 4.421(b)(2) [convictions numerous and increasing seriousness], 4.421(b)(4) [on probation when committed crime], 4.421(b)(5) [poor performance on probation].) Additionally, there was no factor in mitigation. (See Case Nos. A134782 & A138665, CT 426.)

Appellate courts presume the trial court imposed a discretionary consecutive sentence. (*People v. Jacobo* (1991) 230 Cal.App.3d 1416, 1430 [an appellate court presumes that the trial court knew and applied the correct statutory and case law]; cf. *People v. Alvarez* (1996) 49 Cal.App.4th 679, 695 [an appellate court will not conclude that the trial court

misunderstood the scope of its sentencing discretion "in the absence of some affirmative showing that it misunderstood its discretion"].) Sentencing courts have wide discretion in weighing the aggravating and mitigating factors enumerated in the California Rules of Court. (*People v. Cattaneo* (1990) 217 Cal.App.3d 1577, 1588; *People v. Evans* (1983) 141 Cal.App.3d 1019, 1022.)

The record supports the conclusion that the trial court was aware of its discretion and elected again to impose the fullest sentence permitted. (See *Denham, supra,* 2 Cal.3d at p. 564.) The court referred to its initial sentencing decision in which it had detailed the overwhelming evidence of appellant's guilt, the vulnerability of his victims, whose life had become a "living hell," and appellant's "unbelievable criminal sophistication." (Case Nos. A134782 & A138665, 8RT 1182-1183.) The court clearly intended to exercise its discretion to impose the maximum sentence. (See *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1264 [transcript from resentencing hearing demonstrated the court had reviewed probation officer's report as well as acts and circumstances of case and exercised sentencing discretion based on legitimate factors].) Appellant's claim the trial court misunderstood its sentencing discretion should be rejected.

Moreover, any error would have been harmless. Where a trial court is unaware of its sentencing discretion, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) On this record, there is no reasonable possibility that the trial court would have imposed a lesser sentence. The trial court's detailed recitation of the factors supporting its initial sentencing decision and its reference to that recitation as the basis for its resentencing decision confirm the court would not have imposed a different sentence. (See *People v. Heishman* (1988) 45 Ca.3d

19

147, 201 [no prejudice from court's failure to state reason for denying modification of death verdict]; *People v. May* (1990) 221 Cal.App.3d 836, 839-840 ["no reasonable possibility the sentencing court would alter its conclusion if required to state reasons"]; *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [sentencing error harmless where record indicated court would not have exercised discretion "even if it had been aware that it had such discretion"].) Appellant's challenge should be rejected.

## CONCLUSION

Accordingly, the judgment should be affirmed.

Dated: June 14, 2018                  Respectfully submitted,

                                          XAVIER BECERRA
                                          Attorney General of California
                                          GERALD A. ENGLER
                                          Chief Assistant Attorney General
                                          JEFFREY M. LAURENCE
                                          Senior Assistant Attorney General
                                          RENE A. CHACON
                                          Supervising Deputy Attorney General

                                          /s/ Linda M. Murphy

                                          LINDA M. MURPHY
                                          Deputy Attorney General
                                          Attorneys for Respondent

SF2017203957
42008102.doc

20

## CERTIFICATE OF COMPLIANCE

I certify that the attached RESPONDENT'S BRIEF uses a 13 point Times New Roman font and contains 4,576 words.

Dated:  June 14, 2018            XAVIER BECERRA
Attorney General of California


/s/ Linda M. Murphy

LINDA M. MURPHY
Deputy Attorney General
Attorneys for Respondent

21

## DECLARATION OF SERVICE

Case Name:   *People v. Rodriguez*

No.:         **A152030**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On June 14, 2018, I served the attached **RESPONDENT'S BRIEF** on the parties by transmitting a PDF version of the document to the parties listed below through TrueFiling e-service:

| | |
|---|---|
| John Wilder Lee<br>Attorney at Law | The Honorable Stephen Wagstaffe<br>District Attorney<br>San Mateo County District Attorney's Office |
| Attn.: Executive Director<br>First District Appellate Project | |

Additionally, I served the said document by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

| | |
|---|---|
| Superior Court of California<br>County of San Mateo<br>Main Courthouse-Hall of Justice<br>400 County Center<br>Redwood City, CA 94063-1655 | |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 14, 2018, at San Francisco, California.

|  J. Wong  |  /s/ J. Wong  |
|:---:|:---:|
| Declarant | Signature |

SF2017203957 /42007750.docx

ATTACHMENT "B"
REPLY BRIEF
SUBMITTED BY
APPELLATE COUNSEL
JUNE 15, 2018

ATTACHMENT "B"   ATTACHMENT "B"   ATTACHMENT "B"   ATTACHMENT "B"   ATTACHMENT "B"   ATTACHMENT "B"

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FOUR

PEOPLE OF THE STATE
OF CALIFORNIA,                          NO. A152030

    Plaintiff and Respondent,        (San Mateo County
                                        Superior Court Case
v.                                      No. SC074586)

PEDRO LUIS RODRIGUEZ,

    Defendant and Appellant

_____/

## APPELLANT'S REPLY BRIEF

**Appeal from the Superior Court of San Mateo County**

**The Honorable Jonathan E. Karesh, Presiding**

J. Wilder Lee (SBN: 168442)
Attorney at Law
2625 Alcatraz Ave., P.M.B. 191
Berkeley, CA 94705
(510) 204-9409
wilder@greatdefense.com
Attorney for Appellant,
Pedro Luis Rodriguez
by appointment of the Court of
Appeal under the First District
Appellate Project's Independent
Case System

1

> Okay. Now in regards to – in regards to the resentencing,
> these – both the resentencing and motion to vacate, that
> there is a – they are kind of joined. There is a nexus
> between them, where I would – I would like to present
> Sherman Kwok as a witness in mitigating factors, in
> regards – and this goes back to the original questions that,
> per the Appellate Court's opinion, I was simply here to be
> resentenced. ¶ Now, it is my understanding that, in
> resentencing, just because I have one of my counts vacated,
> the Court could restructure my resentencing where, either,
> in terms of probation, or however the Court would fit to
> restructure my probation, since the Court is able to have
> that ability to restructure my sentencing, I would have – I
> should have the ability, myself, to present mitigating
> factors. ¶ And one of those mitigating factors would be
> testimony from Sherman Kwok and the evidence in his
> possession that I fell was not introduced at trial. And that's
> kind of where everything gels together here, that there is
> evidence that I know is available, that is in the possession
> of the Regional Forensic Crime Laboratory, that I wish to
> introduce as a mitigating factor as part of this resentencing
> hearing.

(1 RT 8-9.)

The prosecutor objected to Rodriguez's request to present mitigating evidence and the trial court agreed with the prosecutor. (1 RT 9.) Respondent errs by claiming Rodriguez's request was to present evidence at a hearing on his motion to vacate his convictions. Rodriguez asked to present mitigating evidence at his sentencing hearing. The trial court denied that request.

The denial of Rodriguez's request to present evidence of mitigating circumstances was error. (Pen. Code § 1204 ["The circumstances shall be presented by the testimony of witnesses

8

ATTACHMENT "C"
COURT OF APPEAL
FIRST APPELLATE DISTRICT
DIVION FOUR
OPINION FILED
12/21/18
pg 5 and 6 address
motion to vacate

ATTACHMENT "C"    ATTACHMENT "C"    ATTACHMENT "C"    ATTACHMENT "C"    ATTACHMENT "C"

Filed 12/21/18  P. v. Rodriguez CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>PEDRO LUIS RODRIGUEZ,<br><br>      Defendant and Appellant. | A152030<br><br>(San Mateo County<br>Super. Ct. No. SC074586A) |

This matter returns to us after we vacated one of the convictions of defendant Pedro Luis Rodriguez and remanded the case to the trial court for resentencing. (*People v. Rodriguez*, case No. A134782, filed Nov. 3, 2014.) Defendant again appeals, contending the trial court misunderstood the scope of its discretion when it resentenced him. We shall affirm the judgment.

## I.  BACKGROUND

### A. The Convictions and Original Sentence

Defendant was convicted of stalking (Pen. Code, § 646.9, subd. (a); count 1)[1]; stalking while under a restraining order (§ 646.9, subd. (b); count 2); identity theft (§ 530.5, subd. (a); count 4); computer fraud (§ 502, subd. (c)(1); count 5); electronic data theft (§ 502, subd. (c)(2); count 6); destroying computer data or programs (§ 502, subd. (c)(4); count 8); intercepting electronic communications (§ 632.5, subd. (a); count 9); misdemeanor domestic battery (§ 243, subd. (e)(1); count 10); and

---

[1] All statutory references are to the Penal Code.

1

misdemeanor making threatening or annoying telephone calls (§ 653m, subd. (a); count 11).

Defendant's convictions were based on a course of conduct toward his former girlfriend that took place between late October 2010 and March 2011, which is described in detail in our November 3, 2014 opinion in defendant's original appeal. In brief, defendant called the victim repeatedly, up to 20 times a day, and sent repeated text messages; continued calling her after she changed her number; used a "spoof card" to make it appear the calls were coming from members of her family; knocked on her apartment door or windows, sometimes in the middle of the night; tried to break into her apartment; and sent emails to her attorney indicating he had been following her. During this period, the victim learned that, without her knowledge, her cell phone service had been suspended and her debit card cancelled; the passwords of her email, Facebook, and Verizon wireless on-line accounts had been changed; and her voice mail box and cell phone pin numbers had been changed. Defendant was subject to a restraining order during part of this time.

At the original sentencing hearing, the court explained the reasons for its sentencing choices: "Mr. Rodriguez, to be quite honest, your conduct was appalling in my view. [¶] I think that the evidence was overwhelming of your guilt. I think that what you did was turn [the victim's] life into a living hell for those many months and it [has] effects that she still is experiencing today. [¶] This is not a probationary sentence for a number of reasons, including the vulnerability of the victim, the fact that you were an active participant in the crime, as well as the unbelievable level of criminal sophistication in the commission of these crimes. [¶] So the issue then is: What is the sentence going to be? There are a number of aggravating factors, Mr. Rodriguez, that the Court takes into account in deciding which term to choose. [¶] And what I am going to consider in imposing the upper term and giving you consecutive sentences is the fact that you show no remorse, you were on probation at the time, you inflicted emotional injury on her, I think you remain a danger to her and others, the crimes were numerous and of increasing seriousness, and your prior—you had prior unsuccessful performance on probation." The

court imposed the upper term of four years for count 2, stalking while under a restraining order, with consecutive eight-months terms for simple stalking (count 1), identity theft (count 4) and intercepting electronic communications (count 9). The sentences on the other felony convictions were stayed pursuant to section 654.

## B. The Appeal

In the first appeal, a different panel of this court concluded defendant was improperly convicted of both simple stalking (§ 946.9, subd. (a), count 1) and stalking while under a restraining order (§ 646.9, subd. (b), count 2) because they were based on a single overlapping course of conduct and constituted but a single substantive offense. We made the following disposition: "The judgment is modified to vacate the conviction on stalking (count 1), and the matter is remanded to the trial court for resentencing. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward a copy to the Department of Corrections and Rehabilitation."

## C. Resentencing Hearing

Defendant represented himself at the resentencing hearing. Before the hearing, defendant submitted an "In Limine Motion Objection to Re[sen]tencing under Denial of 14th Amendment Procedural Due Process," in which he argued he should be able to present mitigating evidence, including exculpatory evidence, at the resentencing hearing. He also filed a "Motion to Arrest Judgment/Motion to Vacate Judgment," in which he mounted a number of challenges to his convictions.

At the hearing, the trial court told defendant, "In my view, the Court of [A]ppeal remanded the case back to this court for the specific and limited purpose of vacating the conviction as to one of the counts and correcting the abstract. There is nothing in the opinion that suggests that you're entitled to a full reopening of the sentencing process. [¶] So, that's my interpretation of the Court of Appeal opinion."

The prosecutor argued the trial court had no jurisdiction to vacate the judgment or relitigate any issues regarding the Fourth Amendment or the Fourteenth Amendment, or to do anything other than what the Court of Appeal had ordered. She argued that the

3

court, "essentially, has no discretion," and that it was inappropriate to subpoena witnesses to provide information about mitigating or aggravating factors. The trial court agreed.

The trial court went on to say, "I believe that I have the authority simply to follow the Court of Appeal's opinion, and vacate the sentence as to Count 1, resentence the defendant on that ground." The court ruled, "In accordance with the instructions by the Court of Appeal, and that is with regards to Count 1, the simple stalking conviction, which was an eight-month consecutive sentence, is vacated, in accordance with the Court of Appeal's decision. [¶] ... [¶] And the remainder of the sentence is the same, except the total. Instead of six years, it is now five years, four months. The rest of the sentence remains the same, for the same reasons it was back in April of 2012."

## II. DISCUSSION

Defendant's sole contention on appeal is that the trial court misunderstood the extent of its jurisdiction when it resentenced him. When we remand a case for resentencing after reversing one or more subordinate felony counts, "the trial court has jurisdiction to modify every aspect of a defendant's sentence on the counts that were affirmed, including the term imposed as the principal term." (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259 (*Burbine*); accord *People v. Navarro* (2007) 40 Cal.4th 668, 681.) However, the aggregate sentence may not be increased on remand. (*Burbine*, at p. 1259.)

Defendant argues the trial court erroneously took the view that it lacked jurisdiction to do anything other than strike the eight-month term for simple stalking. According to defendant, he was therefore deprived of his rights to a full new sentencing hearing, including the right to present evidence in mitigation, and to the informed exercise of the trial court's discretion.

We reject this contention. Defendant had the opportunity to present mitigating evidence when he was originally sentenced. At the original sentencing hearing, the trial court set forth clearly the reasons it selected the upper term for the primary offense and consecutive terms for the subordinate convictions: the serious nature of defendant's conduct, his lack of remorse, his dangerousness, the effects on the victim's life, and the

4

presence of other aggravating factors. The same judge presided over the resentencing hearing. In resentencing defendant, the court specifically stated that, except for the eight months of the sentence attributable to the vacated count, the rest of the sentence remained the same "for the same reasons it was back in April of 2012."

We recognize that parts of the colloquy at the resentencing hearing suggest the court thought it was authorized only to reduce defendant's sentence by those eight months. But, even assuming the court misunderstood the scope of its authority on remand, we see no possibility of prejudice. When a sentencing court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) That standard is met here. We vacated the conviction for simple stalking (§ 646.9, subd. (a)) on the ground that it was based on the same conduct as the conviction for stalking in violation of a restraining order (§ 646.9, subd. (b)), which is a penalty provision. Thus, precisely the same conduct was before the trial court in the first and second sentencing hearings. The court's original explanation of the reasons for the sentence was unambiguous. In resentencing, the trial court reaffirmed its reliance on the same reasons. On this record, it is clear the court would have exercised its discretion in the same manner on resentencing even if it had taken a different view of the scope of its discretion.

At oral argument, defendant contended that, because he was not permitted to make an offer of proof, there is no basis to conclude his proposed evidence would not have swayed the trial court to exercise its discretion differently. We disagree. Defendant has drawn our attention to no cases holding that he had a *right* to question witnesses at a resentencing hearing after a remand; indeed, he conceded at oral argument that he did not. At the hearing, defendant told the court he wished to present Sherman Kwok, an agent with the Federal Bureau of Investigation who testified at his trial, as a witness in mitigation. He said Kwok and the Regional Forensic Crime Laboratory possessed evidence that was not introduced at trial. It appears from this statement and from

5

defendant's "Motion to Arrest Judgment" that Kwok's proposed testimony would concern not circumstances in mitigation (see Cal. Rules of Court, rule 4.423), but the propriety of defendant's convictions—convictions that were affirmed on appeal. (See *Burbine, supra,* 106 Cal.App.4th at p. 1265 [" '[o]pinions as to the innocence of a defendant after a jury has already reached a guilty verdict are not a factor in mitigation.' "].) We are satisfied that the trial court's refusal to entertain such evidence did not prejudice defendant, especially in light of the trial court's clearly articulated reasons for imposing the maximum felony sentence for the exact same conduct during defendant's original sentencing hearing.

### III.   DISPOSITION

The judgment is affirmed.

6

_____
                                Tucher, J.

We concur:


_____
Streeter, Acting P.J.


_____
Lee, J.*


_____
* Judge of the Superior Court of California, City and County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Rodriguez* A152030

7

ATTACHMENT "D"
12/22/18 LETTER FROM
APPELLATE COUNSEL
EXERCISING DISCRETION
NOT TO PETITION FOR
REVIEW IN STATE
SUPREME COURT

ATTACHMENT "D" ATTACHMENT "D" ATTACHMENT "D" ATTACHMENT "D" ATTACHMENT "D"

# J. Wilder Lee

Attorney at Law
2625 alcatraz Ave., PMB 191
Berkeley, CA 94705
(510) 204-9409

December 22, 2018

Pedro Rodriguez (BC6583)
Valley State Prison
P. O. Box 96
Chowchilla, CA 93610-0096

Re:    *People v. Pedro Rodriguez,* Court of Appeal, First App. Dist., Case No. A152030

Dear Mr. Rodriguez:

The court of appeal decided your case yesterday. We lost. A copy of the opinion is enclosed. The court found that even if the judge did not understand his sentencing discretion, you were not prejudiced by this error. As part of this appeal, we did get the trial court to make a finding that your restitution fines had been paid. So you at least got some benefit out of this process.

It is possible to petition the California Supreme Court for review of this decision. I do not think that you will get any further benefit from doing so. You have already served the sentence in this case. You have no more outstanding fines or fees in this matter. You are now serving a difference sentence in a different case. There is nothing to be gained.

Under the terms of my appointment, I have the discretion to decide whether to file a petition for review on your behalf. I am exercising that discretion by deciding not to file a petition for review. In my professional opinion, your case does not present the type of issues that would be granted review by the California Supreme Court. As you are no longer in custody on this matter, you would not be able to bring a petition for writ of habeas corpus in federal district court even if you did achieve finality in state court by filing a petition for review.

A petition for review is due within 10 days after the court of appeal's opinion becomes final. An opinion in a case such as your appeal becomes final 30 days after the opinion is filed. So a petition for review must be filed within 40 days of December 21, 2018, when the court of appeal filed its opinion. I calculate that the 40th day is January 30, 2019.

1

You should have a copy of the petition for review that was filed in your previous appeal, Case No. A134782. If you decide to file your own petition for review, you can follow that format. The petition must be filed at

> Supreme Court of California
> 350 McAllister Street, Room 1295
> San Francisco, CA 94102-4797

I will send you the record on appeal next week. If you have any questions, I will be glad to answer them.

I regret that we did not get a better opinion from the court of appeal.

Sincerely,

J. Wilder Lee

2